UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

 

THE MOUNT SINAI HOSPITAL,

      Plaintiff,

    v.

ATTACHMATE CORPORATION,

      Defendant.

CIVIL ACTION NO.:

JURY TRIAL DEMANDED



**COMPLAINT**

Plaintiff the Mount Sinai Hospital ("Mount Sinai") alleges:

**NATURE OF THE ACTION**

1.    This is a civil action for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, for a declaration that Mount Sinai has not infringed any valid copyright of Attachmate Corporation ("Attachmate") and has not breached any contract between Mount Sinai and Attachmate. Alternatively, this action is for breach of contract against Attachmate for failure to comply with its contractual obligations.

2.    Since 2007, Attachmate has become a frequent flier in federal courts, concocting a business plan unique in the software industry. Rather than merely selling its software and licenses, Attachmate has instead threatened or commenced litigation against its existing customers based on an unreasonably aggressive and legally baseless reading of a click-wrap or click-through software license agreement. Attachmate "audits" its customers, inevitably claiming to have found software over-deployment that greatly exceeds the number of licenses the customer has purchased. This predatory scheme has resulted in the filing of at least 25 identical

lawsuits across the country, most involving healthcare providers.  A list of these lawsuits is attached as Exhibit A.

3.      Mount Sinai has been a long-time customer of Attachmate that has spent millions purchasing Attachmate's software licenses and upgrades.

4.      However, Attachmate now has decided to employ its scheme against this long-time customer.  Attachmate has "audited" Mount Sinai and demands payment of over $10 million in additional licenses fees, back maintenance, and back interest.  Attachmate claims that Mount Sinai was contractually obligated to purchase almost 10,000 additional software licenses, even though only about 1400 devices had the Attachmate software installed on their hard drives, and only approximately 1000 users had the potential to access the software for interactive use. Attachmate separately demands:  (1) that Mount Sinai purchase annual maintenance going back four years on devices that Attachmate claims required a license, even though there are no contractual provisions supporting this demand, and (2) substantial payments for back interest without any contractual basis to do so.  Mount Sinai has brought this declaratory judgment action to stop this unfair practice.

### THE PARTIES

5.      Mount Sinai is a not-for-profit hospital with its principal place of business located at One Gustave L. Levy Place, New York, New York 10029.  Founded in 1852, Mount Sinai is a 1,171-bed, tertiary-care teaching facility acclaimed internationally for excellence in both inpatient and outpatient clinical care

6.      Upon information and belief, Defendant Attachmate is a corporation organized under the laws of the State of Washington, with its principal place of business located at 705 5th Avenue South, Suite 1100, Seattle, WA 98104.  Attachmate is in the business of licensing

2

various software products.   Upon information and belief, Attachmate is a subsidiary of a privately held enterprise software holding company called The Attachmate Group, Inc.

## JURISDICTION AND VENUE

7.      By this action, Mount Sinai seeks a declaratory judgment that: (a) Mount Sinai has not breached any contract with Attachmate; (b) Mount Sinai has not infringed any valid copyright of Attachmate; and (c) if a contract exists between Mount Sinai and Attachmate, that Attachmate breached the contract.

8.      To the extent this action arises under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      This case involves an actual controversy between the parties for which declaratory relief is sought, pursuant to 28 U.S.C. §§ 2201 and 2202, regarding their respective rights and other legal relations arising under the Copyright Act, 17 U.S.C. §§ 101 et seq.

10.     The amount in controversy between the parties exceeds $75,000, exclusive of interest and costs.  Mount Sinai and Attachmate are citizens of different states.  Accordingly, this Court has jurisdiction over the claims over the software licensing agreement under 28 U.S.C. § 1332.

11.     The Court also has supplemental jurisdiction over the software licensing disputes discussed below, because these claims are so related to the federal Copyright claims that they form part of the same case or controversy.

12.     This Court has personal jurisdiction over Defendant Attachmate because Attachmate conducts substantial and regular business activities in the District.  Attachmate maintains an office in the District (at One Penn Plaza, 36th Floor, New York, New York) and is registered to conduct business in the State of New York.

13.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) because, for venue purposes, Attachmate resides in this judicial district.

14.     A substantial part of the events or omissions giving rise to Mount Sinai's claims occurred within this judicial district with respect to this civil action.

## FACTUAL BACKGROUND

**Background**

15.     For a number of years, Mount Sinai has purchased and used Attachmate products as part of its normal business operations. The Attachmate products that are relevant to the current dispute are a family of Attachmate software products referred to as "Reflection." Mount Sinai purchased and used various versions of Reflection, including products known as "Reflection Multi-Host Standard," "Reflection Standard Suite" and "Reflection 2014" (collectively "Reflection Products")

16.     The Reflection Products are a form of terminal emulation software, designed to connect Windows-based devices with other non-Windows operating systems. The software allows users to access data or programs (such as accounts payable or payroll programs) on a host server from an individual computer. In this way, a Reflection Product acts as a middleman between the individual user's computer and the host server.

17.     Because of the distinct function of the Reflection Products, the software is not used widely in Mount Sinai's system. Approximately 1400 of Mount Sinai's computers have a copy of the Reflection Products installed or loaded on their permanent or temporary memory. Attachmate does not claim that there was any over-installation of these local copies.

18.     Approximately 1000 Mount Sinai users can interactively use the Reflection Products by accessing a copy located on Mount Sinai's Citrix servers. These users can use the

4

Reflection Products to access certain programs on Mount Sinai's servers, but only if they have a password for those programs. The number of passwords available (and by extension the number of users) to access those programs is less than the total number of licenses Mount Sinai owned.

19.     Thus, no more than approximately 1000 total users could or would ever have reason to use Reflection interactively to access any of those underlying programs.

**The Software License Agreement**

20.     Attachmate's default method of conveying an offer of license and its terms is through a click-wrap or click-through license, whereby the purchaser accepts the terms of the license at the time of installation or download.

21.     Attachmate included with the software an "Attachmate Software License Agreement" ("License Agreement"), a copy of which is attached as Exhibit B. Attachmate wrote the License Agreement without input from or negotiations with Mount Sinai.

22.     The License Agreement included a "Product Use Rights Appendix" that set forth the license type and the terms of the license usage. *See* Exhibit B at 6. The License was a "desktop" license, which required the purchaser to acquire licenses pursuant to the following terms:

> You must acquire and dedicate a desktop license (i) for each device (including virtual machines and portable-storage devices) on which the Software or any component of the Software is installed or loaded in the permanent or temporary memory of the device and (ii) for each additional end-user device (including virtual machines) through which a copy of the Software could be accessed for interactive use. Notwithstanding the foregoing, you may create copies of the Software on network storage devices and on server-class computers for the sole purpose of serving your licensed devices, and such copies will not consume license count.

*Id.*

The License Agreement also included a "person exception" that allowed the primary-user of a licensed device to

> (i) use any device to operate such primary-user licensed device remotely; (ii) operate one designated home or portable device as an alternative primary device (which alternative primary device may have an additional copy of the Software); and (iii) operate the Software from outside of your corporate network via devices which are not primarily used for your business purposes (for example, personal and public devices).

Exhibit B at 6.

23. After purchase from Attachmate (at various dates from 2011 to 2013), Mount Sinai downloaded and installed Attachmate's products onto Mount Sinai's servers.

**Attachmate's Audit of Mount Sinai's Software Usage**

24. On July 1, 2014, Attachmate sent a letter to Mount Sinai requesting an audit of Mount Sinai's usage of Attachmate's software products, including the Reflection Products. Rather than conduct the audit itself, Attachmate asked Mount Sinai to work with the third-party auditor Deloitte & Touche LLP. Mount Sinai fully cooperated at every stage of the audit, and over the course of the next two months, collected information from its network regarding the installed Reflection Products. In doing so, Mount Sinai followed Attachmate's program scripts to comply with Attachmate's requests.

25. On September 2, 2014, Attachmate sent Mount Sinai an email comparing the identified installations of Attachmate software with Mount Sinai's license entitlement. Attached to that email was a spreadsheet that purported to show that Mount Sinai had "overdeployed" the Reflection Products on 9762 additional devices, and thus it needed to purchase a commensurate number of additional licenses. Attachmate demanded that Mount Sinai resolve the so-called license shortfall, and do so within 30 days.

26.    Following some discussions, on October 16, 2014, Attachmate sent Mount Sinai an email demanding payment for the allegedly over-deployed software at a rate of $417 per unit or over $4 million.  Attachmate also claimed that it was entitled to back interest of over $1.95 million and back "maintenance" fees of over $4.8 million.  The total demand, therefore, was over $10.2 million.

**Attachmate Seeks Payment Based on Various Incorrect Bases**

27.    Mount Sinai disputed and continues to dispute several of the grounds on which Attachmate bases its claims for payment.

28.    First, Mount Sinai has investigated Attachmate's claims, and discovered that Attachmate has based the number of alleged "deployments" upon a mistaken view of the total number of users or devices that could have accessed the Reflection Products for interactive use.

29.    The bulk of Attachmate's claim turns on its analysis of Mount Sinai's Citrix network.  Citrix is a terminal server that allows users or devices to gain secure access to a mainframe or host server through their desktops or laptops through a virtual private network (VPN).  This technology is commonplace in large corporations, and permits remote users or devices to access the network.  Attachmate claimed that 9,762 unauthorized machines could have accessed or used its Reflection Products through Mount Sinai's Citrix network.

30.    However, Mount Sinai was required to purchase licenses for a far smaller universe of users and devices.  As noted above, the License Agreement required Mount Sinai to purchase a software license for each device through which "a copy of the Software could be accessed for interactive use."  Few hospital personnel actually have or had the ability to interactively use the Reflection Products through Citrix.  These users or devices can interactively use the Reflection Products to access certain programs on Mount Sinai's servers, but only if they

have a password for those programs.  Only approximately 1000 people have been issued such credentials -- all of whom are employees who need access to the password protected programs or data on Mount Sinai's mainframe/UNIX (the target programs) through the Reflection Products. No other employees or devices could or would be able to use or "access" the Reflection Products for "interactive use," because no other employees had the credentials (username and password), much less the need to use those programs.  Thus, the number of people or devices that had the potential to  "access" the Reflection Product for "interactive use" was far fewer than what Attachmate claims, and was certainly far fewer than the number of Reflection licenses that Mount Sinai owned.

31.     Second, as noted above, the Software license agreement included a "person exception" that allowed the primary-user of a licensed device to remotely access the software by (1) remotely accessing the licensed device, (2) operating an alternative primary device, and (3) operating the software from a device outside the network.  Attachmate's analysis failed to account for devices that fell under this exception.

32.     Third, Attachmate has obstructed any proposed performance under the contract. Although Mount Sinai does not admit that any shortfall existed, Attachmate has instructed Mount Sinai that it has to make up for any alleged license shortfall by purchasing Reflection Products at a price that is approximately double the prices charged by Attachmate's authorized resellers.  Upon information and belief, Attachmate has instructed its software resellers not to provide Mount Sinai with any Reflection Products.  Attachmate continues to maintain that Mount Sinai must purchase any further licenses directly from Attachmate at prices that are far higher than the prices normally charged.  Throughout the years that Mount Sinai has used Reflection Products, it has purchased the product through authorized, third-party resellers.

33.     Fourth, Attachmate makes baseless claims for back-maintenance fees. Attachmate claims that Mount Sinai had to purchase maintenance for each device for which Attachmate claims that Mount Sinai needs a license.  However, there is nothing in the License Agreement (or any other contract or agreement between Mount Sinai and Attachmate) that requires Mount Sinai to purchase maintenance for each device that Attachmate subsequently contends should have had a license.

34.     Fifth, Attachmate makes baseless claims for back-interest.  The License Agreement does not provide for any interest component.  Further, the Attachmate License Agreement permits a licensee accused of a license shortfall to acquire additional licenses, from any source, within 30 days without payment of any interest.  In addition, the amount claimed by Attachmate is not liquidated and is not readily determinable by computation with reference to a fixed standard contained in the contract.

35.     Sixth, Attachmate claims that the alleged over-deployment implicates copyright law, and that Mount Sinai has infringed on Attachmate's copyrights in the Reflection Products. However, Mount Sinai has always had a license for the Reflection Products.

36.     Seventh, some of Attachmate's claims are barred (in whole or in part) by the statute of limitations.  Any copyright infringement claim that occurred more than three years before the date of this complaint is barred by 17 U.S.C. § 507.  Any breach of contract claim that occurred more than six years ago is barred by Washington Rev. Code § 4.16.040.

37.     Mount Sinai has maintained and continues to maintain, that it has and has always had a lawful number of licenses for use of the Reflection Products and, therefore, has never over-deployed any such product and has not violated any copyrights.

38.     An actual and substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that: (1) Mount Sinai has not breached the Licensing Agreement; (2) Mount Sinai has not infringed Attachmate's alleged copyrights; and (3) if the parties are bound by the License Agreement, that Attachmate has breached the agreement.

## FIRST CAUSE OF ACTION

### DECLARATORY JUDGMENT - BREACH OF CONTRACT

39.     Mount Sinai realleges and incorporates by reference every allegation contained in paragraphs 1 through 38 above.

40.     Attachmate has expressed its present and immediate intention to escalate its dispute with Mount Sinai to seek a total of over $10.2 million for the alleged over-deployment of Reflection Products, which Attachmate claims is a breach of the Licensing Agreement.

41.     An actual controversy has arisen and now exists between Mount Sinai and Attachmate concerning whether there is a legally binding agreement and whether, if such an agreement exists, Mount Sinai owes Attachmate any monies relating to the licensing of the Reflection Products, back maintenance, or back interest.

42.     Mount Sinai is entitled to a declaration that it owes no monies to Attachmate for any purported over-deployment of the licensed software, back maintenance, or back interest.

## SECOND CAUSE OF ACTION

### DECLARATORY JUDGMENT – COPYRIGHT INFRINGEMENT

43.     Mount Sinai realleges and incorporates by reference every allegation contained in paragraphs 1 through 42 above.

44.     Attachmate has expressed its present and immediate intention to escalate its dispute with Mount Sinai to seek damages for the alleged over-deployment of Reflection Products, which it maintains constitutes an infringement of Attachmate's copyrights.

45.     An actual controversy has arisen and now exists between Mount Sinai and Attachmate concerning whether Mount Sinai has infringed any copyright owned by Attachmate.

46.     Mount Sinai is entitled to a declaration that it has not infringed any copyright owned by Attachmate.

## THIRD CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

47.     Mount Sinai realleges and incorporates by reference every allegation contained in paragraphs 1 through 46 above.

48.     Each pertinent license agreement contained an implied covenant of good faith and fair dealing.  That covenant required Attachmate not to act in such a manner as to deprive Mount Sinai of the benefits owed to it under these contracts.  Attachmate's continued insistence that Mount Sinai acquire additional software licenses for products that were not used under the terms of such contracts, and pay additional fees for back interest and back maintenance, constitutes a breach of implied covenant of good faith and fair dealing.

49.     Attachmate's unreasonable demands for payment have deprived Mount Sinai of the benefits of the contract.  Attachmate seeks to evade its obligations to Mount Sinai.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Mount Sinai Health Systems respectfully requests that this Court enter a judgment:

A.  Declaring that Mount Sinai has not breached any contract with Attachmate relating to any alleged over-deployment of Reflection Products or related maintenance or interest;

B.  Declaring that Mount Sinai is not liable to Attachmate for infringement of any copyright owned by Attachmate for the Reflection Products;

C.  Awarding damages against Attachmate and in favor of Mount Sinai for the harms it has suffered and continues to suffer as a result of Attachmate's breach of the implied covenant of good faith and fair dealing;

D.  Awarding Mount Sinai its costs and expenses of suit, including all reasonable attorneys' fees it has incurred and will incur in this matter;

E.  Awarding Mount Sinai prejudgment and postjudgment interest; and

F.  Granting Mount Sinai such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues triable of right by a jury.

Dated: October 20, 2014

By: _____
James H. Bicks (JB-2930)
Benjamin M. Daniels (BD-9607)
WIGGIN AND DANA LLP
Two Stamford Plaza
281 Tresser Boulevard
Stamford, CT 06901
Tel: (203) 363-7622
Fax: (203) 373-7676
Email: jbicks@wiggin.com

12

Scott R. Landau (SL-3778)
Assistant General Counsel
OFFICE OF THE GENERAL COUNSEL
MOUNT SINAI HEALTH SYSTEM
One Gustave L. Levy Place, Box 1099
New York, New York 10029
(212) 659-8105
scott.landau@mountsinai.org

*Attorneys for Plaintiff*

# EXHIBIT A

## Exhibit A
### List of Attachmate Cases Involving Similar Allegations Since 2007

1. *Pacific Life Insurance Company v. Attachmate Corporation*, Case No. 14cv01265 (S.D.N.Y.)

2. *Saks Incorporated v. Attachmate Corporation*, Case No. 14CV4902 (S.D.N.Y.)

3. *Union Hospital, Inc. v. Attachmate Corporation*, Case No. 2:14-cv-45 (S.D. Ind.)

4. *Waddell & Reed, Inc. and W&R Corporate LLC v. Attachmate Corporation*, Case No. 2:14-cv-2202 (D. Kan.)

5. *Entergy Services, Inc. v. The Attachmate Group*, Case No. 13-5297 (E.D. La.)

6. *Wellmont Health System v. Attachmate Corporation*, Case No.2: 13-cv-00035 (E.D. Tenn.)

7. *Tri-Health, Inc. v. Attachmate Corporation*, Case No. 1:12-cv00901 (S.D. Ohio)

8. *Covance Inc. v. Attachmate Corporation*, Case No.3: 12-cv-04088 (D.N.J.)

9. *Wellspan Health v. Attachmate Corporation*, Case No. 1:12-cv-00109 (M.D. Pa.)

10. *University of Rochester v. Attachmate Corporation*, Case No. 6:12-cv-06019 (W.D.N.Y.)

11. *Northwest Community Hospital v. Attachmate Corporation*, 1:11-cv-06916 (N.D. Ill.)

12. *Franciscan Missionaries of Our Lady Health System, Inc., et al v. Attachmate Corporation*, Case No. 3:11-cv-00582 (M.D. La.)

13. *Polo Ralph Lauren, et al v. Attachmate Corporation*, Case No.1: 11-cv-0 1890 (S.D.N.Y.)

14. *SuperValu v. Attachmate Corporation*, Case No. 07-cv03164 (D. Minn.)

15. *Attachmate Corporation v. Celcom Axiata Berhad*, Case No. 2:10-cv-00526 (W.D. Wash.)

16. *Attachmate Corporation v. Public Health Trust of Miami-Dade County Florida*, Case No. 2:09-cv-01180 (W.D. Wash.);

17. *Attachmate Corporation v. Health Net, Inc.*, Case No. 2:09-cv-01161 (W.D. Wash.)

18. *Attachmate Corporation v. Tarmac Ltd.*, Case No. 2:08-cv01370, (W.D. Wash.)

19. *Attachmate Corporation v. Sentry Insurance*, Case No. 2:08-cv-01035 (W.D. Wash.)

20. *Attachmate Corporation v. Jeld-Wen Inc.*, Case No. 2:08-cv-00897 (W.D. Wash.)

21. *Attachmate Corporation v. United Technologies Corp.*, Case No. 2:08-cv-00799 (W.D. Wash.)

22. *Attachmate Corporation v. Windstream Communications Inc.*, Case No. 2:08-cv-00190 (W.D. Wash.)

23. *Attachmate Corporation v. Dell Inc.*, Case No. 2:07-cv-00283 (W.D. Wash.)

24. *Attachmate Corporation v. Juniper Networks, Inc.*, Case No. 2:07-cv-00802 (W.D. Wash.)

25. *Attachmate Corporation v. Carnival Corporation*, Case No. 2:07-cv-01730 (W.D. Wash.)

# EXHIBIT B

**ATTACHMATE® SOFTWARE LICENSE AGREEMENT**

REFLECTION® FOR IBM® v14.1;
REFLECTION® FOR UNIX AND OPENVMS v14.1;
REFLECTION® FOR HP WITH NSVT v14.1;
REFLECTION® FOR THE MULTIHOST ENTERPRISE [either Edition] v14.1;
REFLECTION® X v14.1; or REFLECTION® SUITE FOR X v14.1:

## IMPORTANT -- READ CAREFULLY:

This constitutes a legal agreement ("Agreement") between you (either an individual representing yourself, or a legal entity that you represent as its employee or authorized agent) and Attachmate Corporation ("Licensor") with respect to the software, together with its included documentation, that you are receiving, accessing or installing ("Software"). Unless you have entered into a separate license agreement with Licensor, you accept and agree to be bound by this Agreement by (i) selecting the "accept" or "yes" option when an on-line process prompts you to accept this Agreement, or (ii) by installing, copying, downloading, accessing or otherwise using the Software. If you do not agree to the terms of this Agreement, Licensor is unwilling to license the Software to you. In such event: (i) you may not install, access or copy the Software, and you should promptly destroy any whole or partial copies of the Software in your possession; and (ii) you may receive a full refund by contacting your Software vendor within 30 days from your date of purchase to obtain instructions for return.

The Software is protected by copyright laws and international copyright treaties, as well as other intellectual property laws and treaties. The Software is licensed, not sold. Unless you have acquired the Software from Licensor or Licensor's agent on an evaluation basis, any license granted by this Agreement relies on your license certificate(s) from Licensor, or your single-copy purchase documentation, identifying the software product and version, license type, unit count, and licensed person or entity. No rights are conveyed to you by your mere possession of a copy of this Agreement, the Software, or any access codes or keys enabling the Software. Any third-party software that is provided with the Software and that is associated with a separate license agreement is licensed to you under the terms of that license agreement ("Third Party Terms"), as referenced from the "General Information" section at the foot of this Agreement.

## SOFTWARE LICENSE

1.  LICENSE GRANT. Subject to (i) acceptance of and compliance with this Agreement and (ii) timely payment of all required payments, Licensor and its suppliers grant you a non-exclusive, non-transferable license to use the Software for internal business purposes in accordance with the applicable product use rights ("Product Use Rights") as set forth in the Product Use Rights Appendix which is attached to this Agreement and incorporated by this reference. This license is subject to the following terms as applicable:

    A.  COMPLIMENTARY AND TIME-LIMITED EVALUATION SOFTWARE. If the Software is provided to you as a "Complimentary" or "Comp" copy, then you may use a single copy of the Software for demonstration, test, or evaluation purposes only. If the Software is provided to you as an "Evaluation" copy, then you may install and use a reasonable number of copies of the Software for the Evaluation Period only, solely for evaluation and test purposes and not for production use. The "Evaluation Period" extends from your first installation of the Software to the earlier of (i) the date when the Evaluation version automatically ceases to function, or (ii) sixty (60) days after your first installation. At the end of the Evaluation Period, your license to the Evaluation version of the Software is automatically terminated. You may not extend the time limits of the Software in any manner.

    B.  MAINTENANCE-ENTITLEMENT UPGRADE. If you received the Software as an entitlement under a Licensor support or maintenance program with regard to software previously licensed to you ("Prior Software"), then this paragraph applies to you, You may use the Software to replace your licensed unit count of the Prior Software on a one-for-one basis, such that the total number of Software and Prior Software units does not exceed the authorized licensed unit count for the Prior Software. Upon your first such replacement of Prior Software, this Agreement shall govern any surviving units of Prior Software for as long as such units survive, except that the product use rights terms of the original Prior Software license shall override the corresponding Product Use Rights terms of this Agreement. If you are not yet ready to deploy the Software, you may retain a copy of it for future use in accordance with the terms of this Agreement.

    C.  OTHER UPGRADES OR REPLACEMENTS. If your license certificate characterizes the Software as an upgrade or migration from or competitive trade-in of other software previously licensed to you ("Subject Software"), then this paragraph applies to you. You must comply with any special instructions accompanying your license transaction for the Software, and you must destroy the Subject Software when you deploy the Software unless such accompanying instructions direct otherwise.

    D.    VERSION RIGHTS AND AUTHORIZED ALTERNATIVES. This Agreement is specific to the Software (by product and version) that it accompanies, and you may not re-allocate your Software licensed unit count to another product or version except under express written permission from Licensor. Unless such permissions are granted in the Product Use Rights Appendix, they must be obtained via a separate written "Authorized Alternatives" agreement, which Licensor may elect to publish at www.attachmate.com/info/alternatives or may otherwise make available to you.

    E.    SUITE PRODUCT EFFECTS. This paragraph applies if the Software has been delivered to you as a component product ("Component Product") of a "suite" product named on your license certificate (the "Suite Product"), and if the Suite Product does not have a corresponding PRODUCT section in the Product Use Rights Appendix. Your license certificate entitlement to the Suite Product gives you entitlement to the Component Product, as if the Component Product had also been named on the license certificate. The "Suites License Agreement" that you separately accept in the process of Component Product download or install will control the Suite Product licensed unit count available to the Component Product, and may address additional aspects of Component Product deployment in the context of the Suite Product.

    F.    LIMITED USE RESTRICTIONS. If you acquired the Software subject to limited-use restrictions (e.g., limited use of certain functionality or options) established in separate documentation between you and Licensor, or if you acquired the Software as a modification to or replacement of prior software which is so restricted, then (i) notwithstanding any terms to the contrary in the Product Use Rights Appendix, you may only install, access or use the Software in such limited manner and (ii) in interpreting the Product Use Rights Appendix, you must apply the restrictions in the broadest possible manner.

2.    OTHER RIGHTS AND LIMITATIONS. Except as otherwise expressly provided in this Agreement or the applicable Product Use Rights, the following rights and limitations apply:

    A.    RESERVATION OF RIGHTS. Licensor reserves all rights not expressly granted under this Agreement.

    B.    LIMITATIONS ON REVERSE ENGINEERING, DECOMPILATION, AND DISASSEMBLY. You may not reverse engineer, decompile, or disassemble the Software, or otherwise attempt to discover its source code, except and only to the extent that such activity is required to be permitted by applicable law.

    C.    COPIES. You may not copy the Software, or any portion thereof, except as allowed by the applicable Product Use Rights and except to make one copy for institutional backup or archival purposes. Any such backup or archival copy must not be installed except as part of a recovery event. You must include all copyright notices and other proprietary rights legends on each copy of the Software.

    D.    SEPARATION OF COMPONENTS. The Software is licensed as a single product, whose component parts (i) may not, under a single licensed unit, be separated for installation or use on more than one computer, except in accordance with the Product Use Rights applicable to your license(s) and the Software documentation and (ii) may not be operated in a manner that exposes the Software-imbedded functionalities for general-purpose use beyond the scope of the Software as represented in the Software documentation.

    E.    RENTAL AND HOSTING. You may not rent, lease, sell, sublicense or lend the Software. You may not use the Software to provide commercial hosting services.

    F.    TRANSFER. You may not transfer the Software or assign your rights or obligations under this Agreement (including an assignment or any other transfer by operation of law) to any person or entity without the prior written consent of Licensor.

    G.    PERFORMANCE DISCLOSURE. You shall not disclose the results of any performance, functionality or other evaluation or benchmarking of the Software to any third party without Licensor's prior written consent.

    H.    LANGUAGE VERSIONS. If the Software as provided to you includes more than one language version of the same software product, you may use any of the language versions, and each deployment of any language version will consume a licensed unit.

    I.    NOTE ON JAVA SUPPORT. If the Software product you acquired contains programs written in Java, you acknowledge that the Software is not designed or licensed for use in on-line control equipment in hazardous environments, such as operation of nuclear facilities, aircraft navigation or control, or direct life-support machines. You warrant that you will not use the Software for such purposes.

J.    UPDATES, UPGRADES AND MAINTENANCE

    (i)    An "Update" is supplemental code (sometimes referred to as a patch, fix, modification, enhancement, or service pack) that addresses one or more specific issues in the Software; it is considered part of the Software and is subject to the terms and conditions of this Agreement unless accompanied by its own terms. You may use an Update only if Licensor has authorized you to do so and only for your licensed copies of the Software for which the authorization was given.

    (ii)    An "Upgrade" is a successor release to the Software, generally represented by a change in the product version number (e.g., from x.x to x.y or to y.y) and intended to replace the Software. In order to obtain license to an Upgrade, you must purchase such Upgrade for all licensed copies of the product or be entitled to the Upgrade by having a current maintenance plan with Licensor for all licensed copies of the product. An Upgrade is governed by the software license agreement that accompanies it.

    (iii)    Except as provided under either the Limited Warranty remedies set forth below or a Licensor product offering that you separately purchase, Licensor is under no obligation to provide Upgrades, Updates, or maintenance or support services to you. Should Licensor offer maintenance plan subscriptions and/or Upgrade licenses for the Software, Licensor is entitled to require that maintenance plan and Upgrade purchases must include all licensed units of a product. Maintenance plan subscriptions, if offered, shall be payable in advance for the period of coverage and shall be non-refundable.

3.    TERMINATION. If you breach any term of this Agreement, Licensor may terminate this Agreement without waiving any other Licensor rights or remedies. If Licensor terminates this Agreement, you must destroy all copies of the Software and, on request of Licensor, certify destruction. If you breach the terms of this Agreement such that Licensor may have no adequate remedy in money or damages, Licensor may immediately seek an injunction against such breach without waiving any other Licensor rights or remedies.

4.    VERIFICATION. Licensor has the right to verify your compliance with this Agreement. You agree to:

    A.    Implement internal safeguards to prevent any unauthorized copying, distribution, installation, or use of, or access to, the Software;

    B.    Keep records sufficient to certify your compliance with this Agreement (including its Product Use Rights Appendix), and, upon request of Licensor, provide and certify metrics and/or reports based upon such records and account for both numbers of copies (by product and version) and network architectures as they may reasonably relate to your licensing and deployment of the Software; and

    C.    Allow a Licensor representative or an independent auditor ("Auditor") to inspect and audit your computers and records, during your normal business hours, for compliance with the licensing terms for Licensor's software products. Upon Licensor's and Auditor's presentation of their reasonable written commitment(s) to safeguard your confidential information, you shall fully cooperate with such audit and provide any necessary assistance and access to records and computers. If an audit reveals that you have or at any time have had unlicensed installation, use of, or access to the Software, you will, within 30 days, purchase sufficient licenses to cover any shortfall without benefit of any otherwise applicable discount and subject to license fees reflecting the duration of the shortfall. If a material license shortfall of 5% or more is found, you must reimburse Licensor for the costs incurred in the audit.

5.    EXPORT. You are responsible for complying with all trade regulations and laws both foreign and domestic. You acknowledge that this Software may only be exported or re-exported in accordance with U.S. Government Export Administration Regulations. Without authorization from the U.S. Government, you may not export or re-export the Software (i) to any prohibited country, person, entity, or end-user as specified by U.S. export controls or (ii) for use in the design, development or production of nuclear, chemical, or biological weapons, or missile technology, or any other prohibited use. You warrant and represent that neither the Bureau of Industry and Security of the U.S. Commerce Department nor any other U.S. Government entity or agency has suspended, revoked or denied, in whole or in part, your export privileges. For current information on U.S. export requirements and restrictions visit www.bis.doc.gov/.

6.    LICENSE RIGHTS APPLICABLE TO THE U.S. GOVERNMENT. Licensor is providing commercial off-the-shelf Software developed at private expense and made available to the commercial market pursuant to Licensor's commercial license terms and conditions. By accepting delivery of, installing, or using the Software, the U.S. Government or its prime contractor or subcontractor (at any tier) hereby agrees that notwithstanding anything to the contrary, and to the maximum extent possible under federal law, Government's rights in the Software acquired in accordance with FAR Part 12 or DFAR 227.7202-4, including rights to use, modify, reproduce, release, perform, display or disclose the Software, will be subject in all respects to the commercial license rights and restrictions provided in this Agreement and no other license terms shall be incorporated into this Agreement except by authorized mutual written consent.

7.   GOVERNING LAW AND ATTORNEYS' FEES. This Agreement is governed by the laws of the State of Washington, USA, excluding its conflict of laws rules, and specifically excluding the United Nations Convention on Contracts for the International Sale of Goods. If you acquired this Software in a country outside of the United States, that country's mandated laws shall apply. In any action or suit to enforce any right or remedy under this Agreement or to interpret any provision of this Agreement, the prevailing party will be entitled to recover its costs, including reasonable attorneys' fees.

8.   ENTIRE AGREEMENT. This Agreement in combination with the Software's associated license certificate(s) constitutes the entire agreement between you and Licensor with respect to the Software, and replaces all other agreements or representations, whether written or oral. The terms of this Agreement cannot be modified by any terms in any printed forms used by you in performing the Agreement, and can only be modified by express written consent of both parties, except that the following actions by you shall have the effect of modifying the Agreement: (i) you may accept a Licensor offer document (such as a quotation) containing offer-specific licensing terms; and/or (ii) you may accept new license terms containing specific language which supersedes this Agreement upon your deployment of an Upgrade or other such specified action. Failure by Licensor to enforce any provision of this Agreement will not be deemed a waiver of future enforcement of that or any other provision. If any part of this Agreement is held to be unenforceable as written, it will be enforced to the maximum extent allowed by applicable law, and will not affect the enforceability of any other part. The original of this Agreement is in English. If it is translated into another language, the English language version shall prevail.

9.   THE FOLLOWING LIMITED WARRANTY ON THE SOFTWARE IS INCORPORATED INTO THIS AGREEMENT BY THIS REFERENCE.

## LIMITED WARRANTY
==================

YOUR JURISDICTION may not allow limitations on warranties or limitations on or exclusion of damages, and in such case the relevant limitations set forth below may not apply to you.

LIMITED WARRANTY. For a period of ninety (90) days from the date Licensor first delivers the Software to you, Licensor warrants that (a) the unmodified Software will perform substantially in accordance with its included documentation when used as directed and (b) Licensor media and electronic delivery packages will be free of physical and electronic defects. Any implied warranties are limited to the 90-day period. This Limited Warranty is void if failure of the Software has resulted from modification, accident, abuse, or misapplication. This Limited Warranty does not apply to any Complimentary or Evaluation versions of the Software, which are provided "AS IS" with no warranty whatsoever.

YOUR EXCLUSIVE REMEDY. The entire liability of Licensor and its suppliers and your exclusive remedy arising from a breach of the limited warranty is, at Licensor's option, either repair or replacement of the nonconforming Software, or return of the price you paid for the nonconforming Software. To be entitled to this remedy you must return all nonconforming Software to Licensor, along with your proof of purchase, within the warranty period. Any replacement Software will be warranted for the remainder of the original warranty period or thirty (30) days, whichever is longer. Outside the United States, neither these remedies nor any product support services offered by Licensor are available without proof of your purchase from an authorized international source.

NO OTHER WARRANTIES. TO THE FULL EXTENT PERMITTED BY LAW, LICENSOR AND ITS SUPPLIERS DISCLAIM ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT, WITH REGARD TO THE SOFTWARE AND THE PROVISION OF OR FAILURE TO PROVIDE TECHNICAL SUPPORT.

LIMITATION OF LIABILITY. LICENSOR AND ITS SUPPLIERS WILL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR PERSONAL INJURY, LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, LOSS OF BUSINESS OR CONFIDENTIAL INFORMATION, LOSS OF PRIVACY, OR ANY OTHER PECUNIARY LOSS) ARISING OUT OF THE USE OF OR INABILITY TO USE THE SOFTWARE OR THE PROVISION OF OR FAILURE TO PROVIDE TECHNICAL SUPPORT, EVEN IF LICENSOR OR ITS SUPPLIERS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN ANY CASE, THE ENTIRE LIABILITY OF LICENSOR AND ITS SUPPLIERS UNDER THIS AGREEMENT AND LIMITED WARRANTY SHALL BE LIMITED TO THE AMOUNT ACTUALLY PAID BY YOU FOR THE SOFTWARE OR TECHNICAL SUPPORT THAT CAUSES THE DAMAGE.

IF YOU ARE A LICENSEE IN EUROPE, THE MIDDLE EAST, OR AFRICA, then notwithstanding anything to the contrary in this agreement, the limitations of liability in this Agreement shall not exclude Licensor's liability for (i) death or personal injury caused by its negligence or the negligence of its employees, agents, or subcontracts, (ii) breach of any implied terms as to title or quiet possession of the Software, or (iii) fraudulent misrepresentation.

## ATTACHMATE PRODUCT USE RIGHTS APPENDIX
=============================================

### COMMON TERMS - ALL PRODUCTS

- DEFINITIONS: As used in this appendix, "Software" means a specific Attachmate software product named below for which you have a license certificate as described in the Agreement, or which you received from Licensor as an Upgrade.  As used in this appendix "product license type" means the fully qualified certificate description of the Software such that the licensed unit count can be applied. For clarity: Descriptors such as 'user', 'server' or 'non-production' may be part of the product license type. Unless defined in this appendix, capitalized terms have the meaning given elsewhere in the Agreement or, if not defined in the Agreement, refer to terms used in purchase confirmation documents or in product documentation, as the case may be.
- STANDARD TERMS: Use the Software family-name headers and the product name and license type tags below (as applicable) to locate the Product Use Rights terms applicable to the Software. Your usage of the Software must be consistent with such terms and with the unit count on your license certificate. Product use rights terms below for other license types or products do not apply to you.
- OTHER PRODUCT LICENSE TYPES: If your product license type does not appear below, then your usage rights must rely on (i) a separate license agreement with Licensor for your product license type or (ii) an addendum document that has the effect of inserting your product license type into this appendix and that is provided to you by Licensor in association with a purchase or upgrade transaction that entitles you to such product license type.
- LIMITED USE RESTRICTIONS REMINDER: Your rights may be limited by restrictions which were part of your Software license acquisition, as described in the License Grant section of the Agreement.

### Attachmate Reflection

PRODUCT:

REFLECTION® FOR IBM® v14.1;
REFLECTION® FOR UNIX AND OPENVMS v14.1;
REFLECTION® FOR HP WITH NSVT v14.1;
REFLECTION® FOR THE MULTIHOST ENTERPRISE [either Edition] v14.1;
REFLECTION® X v14.1; or REFLECTION® SUITE FOR X v14.1:

- LICENSE TYPE: DESKTOP:

    - You must acquire and dedicate a desktop license (i) for each device (including virtual machines and portable-storage devices) on which the Software or any component of the Software is installed or loaded in the permanent or temporary memory of the device and (ii) for each additional end-user device (including virtual machines) through which a copy of the Software could be accessed for interactive use. Notwithstanding the foregoing, you may create copies of the Software on network storage devices and on server-class computers for the sole purpose of serving your licensed devices, and such copies will not consume license count.

    - Person exception: Notwithstanding the foregoing, the primary user of a licensed device may, under that same desktop license and not simultaneously, (i) use any device to operate such primary-user licensed device remotely; (ii) operate one designated home or portable device as an alternative primary device (which alternative primary device may have an additional copy of the Software); and (iii) operate the Software from outside of your corporate network via devices which are not primarily used for your business purposes (for example, personal and public devices).

    - Not licensed for: This license type does not permit the usage models (among others) commonly known as concurrent use, common image with activation, and operation of the Software as middleware. Prohibition of operation as middleware means that the Software may not be deployed for the purpose of providing automated, unattended communications and/or services to other applications or devices.

    - FOR CLARITY regarding the product above, and not as an amendment or addendum to the terms above: This product is licensed for interactive use by end users, focusing primarily on the end-user devices through which access to the Software occurs (or could occur) within your network, regardless of the location of the Software and the network path to it. In addition to traditional desktops, devices which could require a desktop license include hand-helds, laptops, and PC-based virtual machines - in general, any current or future technology which combines an operating system and interactive facilities (such as keyboard and screen) to support end-user operation of the Software. Your Software deployment architecture and your network policies will determine which devices require a license.

## GENERAL INFORMATION
=====================

Attachmate, the Attachmate logo, and Reflection are registered trademarks of Attachmate Corporation in the USA. IBM is a registered trademark of International Business Machines Corporation. All other trademarks, trade names, or company names referenced herein are used for identification only and are the property of their respective owners.

Licensor: Attachmate Corporation, 1500 Dexter Avenue North, Seattle, Washington 98109 United States of America.

Third Party Terms and notices (if any) are delivered with the Software in a 'thirdpartynotices' file in a root directory and/or are included in the documentation or online Help. A copy of the Third Party Terms will be provided on request.

SLA BASE VERSION: 2010.03